IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

WILLIAM MANN, Individually and as
Executor of The Estate of ERNESTINE
MANN, Deceased,

   Plaintiff,

v.

ARBOR TERRACE AT
CASCADE, LLC; THE ARBOR
BARRINGTON COMPANY, LLC
D/B/A THE ARBOR COMPANY,
THE ARBOR CP, LLC, THE
ARBOR HOLDING COMPANY,
LLC, ARBOR MANAGEMENT
SERVICES, LLC, JOHN DOE NO.
1, AND AUDRIENNE STEVENS,

   Defendants.

CIVIL ACTION FILE

No. 1:20-CV-02325-SCJ

## ORDER

This matter is before the Court on Plaintiff's Motion to Remand. Doc. No.

[28].[1] Both Parties filed motions for leave to file additional authority, and after

_____

[1] All citations are to the electronic docket unless otherwise noted, and all page

due consideration, the Court hereby **GRANTS** the Motions at Doc. Nos. [45]; [46]. The Court has considered the attached Supplemental Authority. Additionally, because the Court finds that the Parties' briefing is sufficient to rule upon the Motion to Remand, the Court **DENIES** Defendants' Motion for Oral Argument at Doc. No. [40].

## I.    BACKGROUND

This wrongful death action follows from the death of Ernestine Mann, who contracted COVID-19 while she was residing at Arbor Terrace at Cascade ("Arbor Terrace"), an independent and assisted living facility located in Fulton County, Georgia. Doc. No. [1-1], ¶¶ 12, 16–18.

In March of 2020, Ms. Mann, who was eighty-four years-old at the time, resided in the independent living section of Arbor Terrace. Id. ¶¶ 16–18. On March 11, 2020, Arbor Terrace announced restrictions on outside visitation and contact among residents due to COVID-19, which were to commence the next day. Id. ¶ 26. Plaintiff alleges that after these restrictions were put into place, Arbor Terrace failed to comply with the restrictions in the following ways: (1)

_____

numbers are those imprinted by the Court's docketing software.

staff failed to wear Personal Protective Equipment; (2) asymptomatic staff who had been exposed to COVID-19 continued to work at Arbor Terrace; and (3) Arbor Terrace failed to restrict visitation by individuals from outside of the facility. Id. ¶ 28.  On March 25, 2020, Ms. Mann was experiencing diarrhea and a low-grade fever, and was transported to Piedmont Hospital. Id. ¶ 29. At the hospital, Ms. Mann tested positive for COVID-19. Id. ¶ 30. On March 29, 2020, Ms. Mann coded and was put on a ventilator. Id. ¶ 31. Ms. Mann died later that day from complications of COVID-19. Id. ¶ 32.

On April 17, 2020, the President of The Arbor Company sent an update to residents' families, reporting that: by April 1, 2020, thirteen residents of Arbor Terrace had been hospitalized with positive COVID-19 results; by April 6, 2020, twenty-nine residents had tested positive for COVID-19; since March 26, 2020, at least fifteen residents who tested positive for COVID-19 had died; and at least thirty-four staff members at Arbor Terrace had tested positive for COVID-19. Id. ¶ 33.

On May 29, 2020, Plaintiff William Mann, individually and as executor of Ernestine Mann's estate, filed a Complaint against Defendants Arbor Terrace at Cascade, LLC, The Arbor Barrington Company, LLC, The Arbor CP, LLC, The

Arbor Holding Company, LLC, Arbor Management Services, LLC, John Doe No. 1, and Audrienne Stevens, (collectively "Defendants"), in the State Court of Fulton County, asserting claims for negligence and gross negligence, and seeking wrongful death damages, estate damages, and punitive damages. See Doc. No. [1-1], pp. 6–8. On May 29, 2020, Defendant Arbor Management Services, LLC, removed the case to this Court. See Doc. No. [1], p. 1. In its Notice of Removal, Defendant Arbor Management Services, LLC, contends that this Court has original jurisdiction because the Complaint presents a federal question within the meaning of 28 U.S.C. § 1441(a), arising under the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d, 247d–6e ("PREP Act"). Id. at 4–11. Defendants contend that Plaintiff's state law claims are "completely preempt[ed]" by federal law, and therefore removal is proper. Id. at ¶ 24.

Plaintiff filed a Motion to Remand, arguing that this Court lacks subject matter jurisdiction over Plaintiff's state law claims, and that contrary to Defendants' arguments, the PREP Act does not preempt Plaintiff's state law claims. See Doc. No. [28], p. 1. Defendants filed a response in opposition to Plaintiff's Motion to Remand (Doc. No. [34]), to which Plaintiff replied (Doc. No. [39]).

4

## II.    LEGAL STANDARD

Removal is proper "in any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction may be established by satisfying the jurisdictional prerequisite of federal question jurisdiction pursuant to 28 U.S.C. § 1331, or that of diversity jurisdiction pursuant to 28 U.S.C. § 1332. Federal question jurisdiction exists when the civil action arises "under the Constitution, laws, or treaties of the United States." Id. at § 1331. On a motion to remand a removed case, the removing party "bears the burden of proof regarding the existence of federal subject matter jurisdiction." City of Vestavia Hills v. General Fidelity Ins. Co., 676 F.3d 1310, 1313 n.1 (11th Cir. 2012). Courts must strictly construe the requirements of removal jurisdiction, see Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941), and "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003). Ordinarily, the test for determining whether a claim arises under federal law for purposes of federal question jurisdiction is whether a federal question appears on the face of

the plaintiff's well-pleaded complaint. <u>Louisville & Nashville R.R. v. Mottley</u>, 211

U.S. 149, 152 (1908). However,

> [w]hen the federal statute completely pre-empts the
> state-law cause of action, a claim which comes within the
> scope of that cause of action, even if pleaded in terms of
> state law, is in reality based on federal law. This claim is
> then removable under 28 U.S.C. § 1441(b), which
> authorizes any claim that "arises under" federal law to
> be removed to federal court.[2]

<u>Beneficial Nat'l Bank</u>, 539 U.S. at 8. "Complete preemption is a rare doctrine that

entirely transforms a state-law claim into a federal claim, regardless of how the

plaintiff framed the legal issue in his complaint." <u>Cmty. State Bank v. Strong</u>, 651

F.3d 1241, 1460 n.16 (11th Cir. 2011) (citing <u>Blab T.V. of Mobile, Inc. v. Comcast</u>

<u>Cable Commc'ns, Inc.</u>, 182 F.3d 851, 854–55 (11th Cir. 1999)); <u>see also</u> <u>Caterpillar</u>

<u>Inc. v. Williams</u>, 482 U.S. 386, 393 (1987) ("On occasion, the Court has concluded

_____

[2]  In Defendants' Response in Opposition to Plaintiff's Motion to Remand, Defendants
cite to the United States Supreme Court's decision in <u>Bruesewitz v. Wyeth</u>, 562 U.S. 223
(2011), to contend that the PREP Act fully preempts Plaintiff's state law claims in this
case. <u>See</u> Doc. No. [12], pp. 10–12. Defendants assert that the National Childhood
Vaccine Injury Act ("NCVIA") of 1986, which fully preempted state law claims for
defective vaccine design, is comparable to the PREP Act, and that the <u>Bruesewitz</u> *dissent*
confirms the PREP Act's even stronger preemptive effect than the NCVIA. <u>Id.</u> at 11. The
Court does not find Defendants' comparison persuasive, and notably, in arguing for the
application of <u>Bruesewitz</u> and its treatment of the NCVIA, Defendants acknowledge
that "[<u>Bruesewitz</u>] does not address the issue of complete preemption." <u>Id.</u> at 12.

6

that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"(quoting <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 65 (1987))).

## III.    ANALYSIS

### A.    <u>The Parties' Arguments</u>

Plaintiff's Complaint alleges that on March 11, 2020, Defendant Arbor Terrace announced restrictions on outside visitation and contact among residents due to COVID-19 (Doc. No. [1-1], ¶ 26), and that after these restrictions were put in place, Defendant Arbor Terrace, by and through its employees, failed to comply with these restrictions in the following ways: (1) staff failed to wear Personal Protective Equipment; (2) asymptomatic staff who had been exposed to COVID-19 continued to work at Arbor Terrace; and (3) Arbor Terrace failed to restrict visitation by individuals from outside of the facility. <u>Id.</u> ¶ 28.  Plaintiff's negligence and gross negligence claims assert that Defendants "owed a duty to its residents . . . to exercise ordinary care keeping the premises and approaches at Arbor Terrace At Cascade safe," <u>id.</u> ¶ 38, and that Defendants failed "to take and

enforce the taking of those precautions designed to prevent the spread of Covid-19 among Arbor Terrace's residence and staff," id. ¶ 39.

In his Motion to Remand, Plaintiff contends that because his Complaint alleges "omissions" or "failures" to properly implement and enforce precautions to prevent the spread of COVID-19, the PREP Act, which provides immunity for claims involving the 'administration' or 'use of' a covered countermeasure, does not apply. Doc. No. [28], p. 2.

In response to Plaintiff's Motion to Remand, Defendants contend that the allegations in Plaintiff's Complaint are "squarely covered by the PREP Act" (Doc. No. [34], p. 24), and therefore, federal question jurisdiction is proper. Defendants assert that Plaintiff's Complaint alleges that "Defendants were negligent in *how* they 'used,' 'distributed,' and 'administered['] countermeasures such as PPE, and *how* they implemented their infection control practices during the early stages of the pandemic." Doc. No. [34], p. 4. These activities, Defendants argue, "fall squarely under the definition of 'use' and 'administration' of COVID-19 countermeasures." Id. at 4. Further, in arguing that Defendants are "covered persons" under the PREP Act, Defendants cite to a Response Letter from the Office of the General Counsel of the Department of Health and Human Services

("HHS") to contend that, "[a]s a senior assisted-living facility, Defendants here are, and have been, engaged in the 'management and operation of [a] location[] for [the] purpose of distributing and dispensing countermeasures' to senior citizens in order to fight the spread and impact of COVID-19 and to save lives." Id. at 17 (quoting U.S. Dep't of HHS, Office of the General Counsel, Opinion Letter (Aug. 14, 2020)). The HHS Response Letter that Defendants cite to states,

> [A] senior living community meets the definition of a 'program planner' to the extent that it supervises or administers a program with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility to administer or use a Covered Countermeasure in accordance with' the Declaration.

Id. Defendants contend that the alleged negligent countermeasures in Plaintiff's Complaint are "inextricably intertwined with Defendants' alleged 'administration and use' and 'decisions and activities' related to the physical COVID-19 countermeasures," and that therefore, Plaintiff's claims fall within the scope of the PREP Act to establish federal question jurisdiction. Doc. No. [34], p. 21.

### B.   The PREP Act

The PREP Act was enacted December 30, 2005, and

9

> authorizes the Secretary of Health and Human Services (the Secretary) to issue a Declaration to provide liability immunity to certain individuals and entities (Covered Persons) against any claim of loss caused by, arising out of, relating to, or resulting from the manufacture, distribution, administration, or use of medical countermeasures (Covered Countermeasures), except for claims involving 'willful misconduct' as defined in the PREP Act.

Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 17, 2020). The Secretary initially issued a Declaration, effective on February 4, 2020, "to provide liability immunity for activities related to medical countermeasures against COVID-19," id., and on December 3, 2020, the Secretary issued a Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190. Specifically, the PREP Act defines "covered countermeasure" as: (1) a qualified pandemic or epidemic product, (2) a security countermeasure as defined in § 247d-6b(c)(1)(B), (3) a drug, biological product, or device that is authorized for emergency use, or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health, and that the Secretary determines to be a priority for use during a public health emergency. See 42 U.S.C. §§ 247d-6d(i)(1); 247d-6b(c)(1)(B); 247d-6d(i)(7). The term "covered person" under the Act,

10

> when used with respect to the administration or use of a
> covered countermeasure[,] means . . . a person or entity
> that is (i) a manufacturer of such countermeasure; (ii) a
> distributor of such countermeasure; (iii) a program
> planner of such countermeasure; (iv) a qualified person
> who prescribed, administered, or dispensed such
> countermeasure; or (v) an official, agent, or employee of
> a person or entity described in clause (i), (ii), (iii), or (iv).

42 U.S.C. § 247d-6d(i)(2). Although the term "administration" is not defined in

the PREP Act, the Secretary's Declaration explains,

> Administration of the Covered Countermeasure means
> physical provision of the countermeasures to recipients,
> or activities and decisions directly relating to public and
> private delivery, distribution and dispensing of the
> countermeasures to recipients, management and
> operation of countermeasure programs, or management
> and operation of locations for the purpose of distributing
> and dispensing countermeasures.

85 Fed. Reg. at 79,197.

The Court finds it important to note that the Secretary's amended

Declaration was issued on December 3, 2020, several months after Plaintiff filed

his Motion to Remand and after Defendants filed their response to Plaintiff's

Motion. Notably, the Secretary amended Section IX of the Declaration to state

that "[w]here there are limited Covered Countermeasures, *not* administering a

Covered Countermeasure to one individual *in order to administer it to another*

11

individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d–6d." 85 Fed. Reg. at 79,197 (emphasis added); see also Doc. No. [59-1]. The amended Declaration explains that "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." Id. Thus, in certain cases, "the failure to administer" a covered countermeasure to one individual "'relat[es] to . . . the administration to'" another individual. Id. (quoting 42 U.S.C. § 247d-6d). [3] Importantly, however, the HHS Advisory Opinion 21-01 notes that "[t]he language of the PREP Act itself supports a distinction between allocation which results in non-use by some individuals, on the one hand, and non-feasance, on the other hand, that also results in non-use." Doc. No. [59-1], p. 11. Thus, inaction or failure-to-administer resulting from *prioritization* falls within the scope of the PREP Act. However, as the Advisory Opinion clarifies, the PREP Act's coverage

---

[3]   In Defendants' filing of additional authority in opposition to Plaintiff's Motion to Remand, Defendants point to the HHS Advisory Opinion 21-01 (Doc. No. [59-1]), which was published by the Department's General Counsel on January 8, 2021. Advisory Opinion 21-01 reiterates much of the Secretary's guidance regarding non-use or failure to administer claims, and because the Advisory Opinion "does not have the force or effect of law," id. at 12, the Court does not discuss it at length here. However, the Court has considered the Advisory Opinion in making its conclusions.

does not extend to inaction or failure-to-administer resulting from of non-feasance. Id.

### C.    Plaintiff's Claims Are Not Within the PREP Act's Scope

As aforementioned, Defendants as the removing party "bear[] the burden of proof regarding the existence of federal subject matter jurisdiction." City of Vestavia Hills, 676 F.3d at 1313 n.1. The Court concludes that Defendants have failed to carry their burden of proving that Plaintiff's claims are completely preempted by the PREP Act. Contrary to Defendants' arguments, the Court finds that Plaintiff's claims of loss were not caused by and did not arise out of, relate to, or result from the manufacture, distribution, administration, or use of covered countermeasures within the scope of the PREP Act. See 85 Fed. Reg. 15,198. Whether the Court adopts Defendants' theory that there was some degree of action, or Plaintiff's theory that Defendants failed to act, the Court finds that Plaintiff's claims do not fall within the PREP Act's scope so as to establish federal question jurisdiction.

First, the Court addresses Defendants' theory that there was some degree of action. Although Defendants are correct that "administration" extends to "activities related to management and operation of programs and locations for

providing countermeasures to recipients, such as decisions and actions involving

security and queuing," this is only true "insofar as those activities directly relate

to the countermeasure activities." 85 Fed. Reg. at 15,200. For example,

> the Act precludes a liability claim relating to the
> management and operation of a countermeasure
> distribution program or site, such as a slip-and-fall injury
> or vehicle collision by a recipient receiving a
> countermeasure at a retail store serving as an
> administration or dispensing location that alleges, for
> example, lax security or chaotic crowd control. However,
> a liability claim alleging an injury occurring at the site
> that was not directly related to the countermeasure
> activities is not covered, such as a slip and fall with no
> direct connection to the countermeasure's
> administration or use.

Id. As defined earlier, covered countermeasures include: (1) a qualified

pandemic or epidemic product, (2) a security countermeasure as defined in

§ 247d-6b(c)(1)(B), (3) a drug, biological product, or device that is authorized for

emergency use, or (4) a respiratory protective device that is approved by the

National Institute for Occupational Safety and Health, and that the Secretary

determines to be a priority for use during a public health emergency. See 42

U.S.C. §§ 247d-6d(i)(1); 247d-6b(c)(1)(B); 247d-6d(i)(7). Here, Defendants were

not managing or operating any sort of countermeasure program or site, let alone

one where an injury occurred that was *directly* related to the countermeasure's

14

administration or use. Indeed, the HHS Response Letter from the Office of the General Counsel suggests that a senior living community only meets the definition of a "program planner" for purposes of qualifying as a "covered person" insofar as it "supervises or administers *a program* with respect to the administration, dispensing, distribution, provision, or use of a security countermeasure or a qualified pandemic or epidemic product, including by 'provid[ing] a facility *to* administer or use a Covered Countermeasure.'" U.S. Dep't of HHS, Office of the General Counsel, Opinion Letter (Aug. 14, 2020) (emphasis added). Here, Plaintiff's claims stem from the *lack* of a program.

Defendants have not shown that Arbor Terrace acted as a program planner—Arbor Terrace is not a facility provided for the purpose of administering or using a covered countermeasure, such as PPE. Nor have Defendants shown that Arbor Terrace is supervising or administering a program with respect to the administration or use of any covered countermeasure, such as through the administration of COVID-19 vaccines or the distribution of PPE to its staff or residents. Defendants' alleged failure to require staff to comply with COVID-19 restrictions and wear PPE is not a program to administer covered countermeasures.

Defendants point to Plaintiff's discovery requests to support their contention that Arbor Terrace partook in the "administration and use" and "decisions and activities" related to the physical COVID-19 countermeasures. See Doc. No. [34], 21. However, the well-pleaded complaint rule requires the Court to analyze removal based on the face of a properly pleaded complaint. Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California, 463 U.S. 1, 10 (1983) (quoting Taylor v. Anderson, 234 U.S. 74, 75–76 (1914)) ("[W]hether a case is one arising under the Constitution or a law or treaty of the United States, in the sense of the jurisdictional statute . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."). Moreover, even if Defendants' actions did qualify as "administration or use of a covered countermeasure" within the meaning of the PREP Act, the Act makes clear that "[t]he immunity under paragraph (1) applies to any claim for loss that has a *causal relationship* with the administration to or use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added). Nothing in Plaintiff's Complaint suggests that the decedent's death was causally

16

related to the administration or use of any drug, biological product, device, or any other covered countermeasure. Indeed, the Complaint asserts the reverse—that inaction through failure to take the proper precautions ultimately caused the death of the decedent. Thus, the Court declines to accept Defendants' argument that Plaintiff's claims are completely preempted by the PREP Act.

Second, the Court finds Defendants' alleged inaction is not the kind that may fall within the scope of the PREP Act. As aforementioned, "[w]here there are limited Covered Countermeasures, *not* administering a Covered Countermeasure to one individual *in order to administer* it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. 247d–6d." 85 Fed. Reg. at 79,197 (emphasis added); see also Doc. No. [59-1]. Here, however, Plaintiff does not allege Defendants failed to administer countermeasures to the decedent "in order to administer [them] to another" person. 85 Fed. Reg. at 79,197. The only potentially covered countermeasure that could be construed to be "limited" would be the PPE. Plaintiff does not allege, and Defendants do not argue, that the alleged failure to administer the PPE to staff was done "in order to administer [the PPE] to another" individual. See Doc. No. [1-1], ¶ 28 (alleging that staff failed to *wear* PPE). Further, the Complaint

17

alleges nothing regarding "[p]rioritization or purposeful allocation of a Covered Countermeasure[.]" 85 Fed. Reg. at 79,197. Defendants assert that they engaged in "'decisions and activities' related to the physical COVID-19 countermeasures" (Doc. No. [34], p. 21), but Defendants fail to show how these "decisions and activities" related to the "prioritization" or "purposeful allocation" of a covered countermeasure.

The Court's conclusion falls in line with the recent opinions of several district courts that have considered the same matter following the issuance of the Amended Declaration.[4] <u>See, e.g.</u>, <u>Maltbia v. Big Blue Healthcare, Inc.</u>, No. 20-

---

[4] Plaintiff and Defendants each cite as Supplemental Authority several district court opinions, including Judge Timothy C. Batten's case, which granted the plaintiff's motion to remand against Defendants here and involved the same question of law. <u>See</u> <u>Terry Fields v. Arbor Terrace at Cascade, LLC</u>, No. 1:20-cv-02346-TCB, at 6 (N.D. Ga. Oct. 28, 2020 (granting the plaintiffs' motion to remand, where the plaintiffs' complaint "allege[d] that . . . Arbor Terrace staff failed to wear personal protective equipment; asymptomatic staff who had been exposed to COVID-19 continued to work at Arbor Terrace; and Arbor Terrace failed to restrict visitation by individuals from outside the facility," and concluding that "Defendants have not shown that they were involved in a 'recommended activity' relative to a 'covered countermeasure.'"); <u>see also</u> <u>Gunter v. CCRC OPCO-Freedom Square, LLC</u>, No. 8:20-cv-1546-T-36TGW, 2020 WL 8461513, at *3–4 (M.D. Fla. Oct. 29, 2020) (granting the plaintiff's motion to remand where the plaintiff's "claims do not fall within the scope of the PREP Act, and therefore do not provide a basis for this Court's jurisdiction," as plaintiff "does not allege that any manufacture, testing, development, distribution, administration, or use of countermeasure caused or contributed to the injuries and death of" the decedent). However, the Court notes that because of their timing, these cases did not include or

2607-DDC-KGG, 2021 WL 1196445, at *10–12 (D. Kan. Mar. 30, 2021) (granting the plaintiff's motion to remand because, where the complaint alleged the "defendants failed to take various preventative measures to stop entry, spread, and consequences of COVID-19 within the facility where decedent lived and that [the] defendants' failure to take those precautions led decedent to contract, develop, and die of COVID-19, . . . [the] plaintiff's allegations assert[ed] none of the qualifying inactions described by the PREP Act Declaration . . . . Plaintiff does not allege inaction—non-administration or non-use—caused by or in order to administer covered countermeasures elsewhere"); Est. of McCalebb v. AG Lynwood, LLC, No. 2:20-CV-09746-SB-PVC, 2021 WL 911951, at *1–5 (C.D. Cal. Mar. 1, 2021) (granting the plaintiffs' motion to remand, where plaintiffs asserted numerous acts of negligence by the defendant, including a failure to "[p]rovide its employees with adequate personal protective equipment (PPE) and to ensure that their employees properly utilized such PPE," and finding that, "[w]hile Plaintiffs refer to the failure to provide adequate PPE (and training in its use),

_____

consider the newly Amended Declaration issued on December 3, 2020. See 85 Fed. Reg. 79,190. Thus, although the Court agrees with the outcomes of these cases, the Court does not deeply assess the opinions for purposes of making findings in this case, as the Fourth Amended Declaration was not considered in those cases.

this allegation is one of 19 claims of negligence in a complaint that describes overall inattention rather than conscious decision-making about covered countermeasures while delivering care"); <u>Dupervil v. All. Health Operations, LCC</u>, No. 20-CV-4042 (PKC) (PK), 2021 WL 355137, at *12 (E.D.N.Y. Feb. 2, 2021) (concluding that the PREP Act did not completely preempt the plaintiff's state law claims because the "crux of Plaintiff's claims is that his father died because Defendants failed to take certain steps such as separating residents, enforcing social distancing among residents and staff, timely restricting visitors, cancelling group and communal activities, ensuring adequate staffing levels, enforcing mask-wearing, and screening people entering the facility for symptoms of COVID-19"); <u>Lyons v. Cucumber Holdings, LLC</u>, No. CV 20-10571-JFW(JPRx), 2021 WL 364640, at *5 (C.D. Cal. Feb. 3, 2021) (concluding that the PREP Act did not apply because "even assuming that Plaintiff's allegations could be construed as alleging the administration of covered countermeasures, she does not allege that Decedent's death resulted from Defendants' decisions to administer those covered countermeasures to other individuals"). Although these cases are not binding on the Court, the Court has considered them as persuasive authority.

In sum, like in the cases aforementioned, Plaintiff's claims assert no qualifying inaction described by the PREP Act Amended Declaration. See 85 Fed. Reg. at 79,197. Defendants' alleged inaction was not due to "[p]rioritization or purposeful allocation of a Covered Countermeasure[.]" 85 Fed. Reg. at 79,197. Rather, Plaintiff's claims appear to fall within the "non-feasance" category of inaction, where non-feasance "results in non-use." Doc. No. [59-1], p. 11. While the PREP Act's immunity may cover some inaction claims, the claims in this case do not fall within its scope. Thus, the Court finds that Defendants have not met their burden of showing that Plaintiff's claims of loss were caused by, arose out of, related to, or resulted from the manufacture, distribution, administration, or use of covered countermeasures so as to establish federal question jurisdiction under the PREP Act, see 85 Fed. Reg. 15,198, and therefore, Plaintiff's state law claims are not completely preempted by federal law. Remand in this case is proper.

## IV.   CONCLUSION

For the forgoing reasons, Plaintiff's Motion to Remand (Doc. No. [28]) is **GRANTED**. The Parties' motions for leave to file additional authority are **GRANTED** at Doc. Nos. [45]; [46]. Defendants' Motion for Oral Argument (Doc.

No. [40]) is **DENIED**. The Clerk is **DIRECTED** to remand this case to the State Court of Fulton County and to **CLOSE THIS CASE**.

      **IT IS SO ORDERED** this __13th___ day of April, 2021.


                         _ s/Steve C. Jones_____
                         **HONORABLE STEVE C. JONES**
                         **UNITED STATES DISTRICT JUDGE**